Ruffin, Chief Justice.
 

 In 1823, Blake Piercey, now deceased, gave his bond to his son William, one of the defend
 
 *215
 
 ants, for the sum of $ 100, loaned to the father. In 1826, William went to live on a farm of his own, and his father sent three negroes to assist him; two of whom worked for the son nearly a year, and the third two years. In 1829, the father, being then nearly seventy years of age, and infirm, and his three sons, namely, Ephraim, the present complainant, William and Seaborn, came to an agreement for the division of the father’s estate amongst the sons; by which a plantation and other property to the value of nearly $2,000, over and above the shares of the other two sons, were allotted to the plaintiff, Ephraim; and in consideration thereof he was to pay the debts of the father, and also comfortably provide for and maintain his father and mother during their respective lives. To that effect the plaintiff then entered into a covenant with the father. After this’ the defendant William applied to Ephraim for payment of the bond given to him by his father; but Ephraim alleged that it had been paid by the father, and refused to pay it. William then instituted an action against Blake Piercy, on the bond, and on the pleas of payment and satisfaction obtained a verdict and judgment. On the part of the defendant in the action, it was managed by the present plaintiff, Ephraim; and from the judgment he prayed an appeal to the Superior Court, and became one of the sureties therefor, and obtained another. The parents became dissatisfied with the provision made for them by their son Ephraim, and left his house, and went to reside with their other son William; and there the said Blake continued to reside until his death, intestate, in 1837, pending the appeal in the Superior Court. He had also instituted an action against Ephraim on his covenant to support him and his wife, which was also pending at his death. This last suit, the present defendant,. William, conducted on behalf of his father. Over and above his demand on that covenant, the said Blake left no effects at his death. For the purpose of reviving and carrying on both of those suits, the defendant, Keenon, at the instance and request of William Piercy, administered on the estate of the intestate Blake, and made himself a party to each of the actions; but he attended no further to them, and left them to be conduct
 
 *216
 
 ed by William Piercy and Ephraim Piercy respectively;
 
 S3
 
 Pers°bs most conversant with, and most concerned in, the suits. Upon the trial in the Superior Court of the ac-brought by William on the bond for $100, there was again a verdict and judgment for the plaintiff, and also a judgment against the sureties for the appeal, of whom Epraim Piercy was one; and execution issued thereon.
 

 Ephraim Piercy. then filed this bill^against William' Piercy and Keenon, and therein chatged that the hires of the negroes exceeded in value the amount of his father’s said bond, and were applied,- in part,- to the satisfaction of the bond, and the residue of the hires were given by the father to the defendant William; that, in truth, the bond was given up to the ’father; but that,- after their parents went to live with William, (which the bill attributes to undue influence of William for the unfair purpose of compelling Ephraim to pay large sums on his covenant) the father was induced in his dotage to re-deliver the bond to William, and to acknowledge that it had never been paid. The bill further charges, that the plaintiff refused to emer into the arrangement for a division of the property, and into the covenant to pay his father’s debts, until an account of those debts was stated; that accordingly they were stated' by one Lewis, an accountant, in the presence and with the assistance of Blake Piercy and his son William and other two sons, and amounted to about $500;' but that this' debt on the bond for $100 was not included in that account, nor mentioned by the defendant William, as existing; and has been since brought forward for the purpose of unjustly or fraudulently charging the plaintiff on his covenant to pay the debts of his fa'ther. The bill further charges, that the defendant Keenon is insolvent, and that by combination with the other defendant, William, he refused or failed to plead the want of assets, although no assets have come to his hands, and by such' plea he could have prevented the plaintiff at law from getting judgment against him, the administrator, and, as a consequence, against the present plaintiff and the other' surety for thd appeal: And also that a verdict was found upon the plea of payment in the suit at law, upon the evidence of the
 
 *217
 
 father’s acknowledgment before mentioned; which was untrue in fact, and unfairly obtained in the extreme dotage of the father, and by practising on his infirmities, for the purpose of charging the present plaintiff on his said covenant.
 

 The prayer of the bill was for relief against the judgment, and upon the exhibition of the bill the usual preliminary injunction was granted.
 

 Both of the defendants have answered.- The answer of Keenon admits that he offered no new plea upon being made party to the suit, because he was advised that it was not material that he should; and he understood that .the present plaintiff was the person really interested in the suit, and would attend to it in all respects, so as to protect himself, if it could be done.
 

 The answer of William Piercy denies that the hire of his father’s negroes was applied, or was applicable to the bond sued on, and says that he settled with his father for those hires, and fully satisfied him therefor; and that no part of the bond had been in any manner paid or satisfied, but the whole principal and interest are justly due to him.- He denies that the bond had ever been given up to him, and says, that at the time of dividing his father’s property, this debt was known as one which the plaintiff then understood he was to pay. He admits that at the trial at law he gave in evidence the acknowledgment of his father, that the bond had not been paid; but denies that such acknowledgment was unduly obtained, or was false in itself; and says that it was voluntary and often made by his father, and was, in fact, true. He admits that he received his parents into his house,- and there supported them for several years; but he denies that he did so for the purpose of injuring the plaintiff, or that he induced them to leave the plaintiff, or that he had any other motive for his conduct in this respect, than the discharge of his filial duty. The answer then insists, that the question*whether the bond had been paid, was a matter triable at law,, and had really been fully and fairly tried upon the issues joined in the suit at law, and under the management- of the present plaintiff* who had the said Lewis and several other
 
 *218
 
 witnesses examined, to support the issue on the part of the defendant at iaw, and failed therein both in the County and Superior Court; and, therefore, that there is no ground for invoking the aid of this court, o
 

 On the coming in of the answers, the defendant William moved to dissolve the injunction, and it was dissolved, with costs; and the plaintiff, by leave of the court, appealed, to this court.
 

 We do not perceive any ground of fact or law upon-which the injunction could have been continued. It is to be remembered, that the creditor is not seeking to charge the plaintiff in this court, on his covenant to pay his father’s debts. If he were, the plaintiff might well insist, that he was no party to the suit at law, and that, whether the debt Was due from the father oí not, he ought not to be charged with it, because it was not among those which were stated
 
 to be
 
 owing by his father, and which
 
 he
 
 agreed to pay. The answer, indeed, says, that it was so stated to the plaintiff; and Upon this motion we must take this explicit response to the bill to be true. But, if it were otherwise, and that debt had not been known by, or mentioned to, the plaintiff, so that, as between these parties, the plaintiff might not be bound by his covenant to pay it, yet, if it had not been paid by the father, it remained a debt of the father, notwithstanding the defendant William,-from forgetfulness or other cause, omitted at that time to mention it. Consequently, the father was Still liable in an action against him on the bond, although the present plaintiff was not liable on his engagement then entered into. The" father’s liability was triable and determinable at law,- and has been tried and determined twice against him. Now, the liability of the plaintiff in this suit does not arise off hi's original contract with his father, but on his new engagement for him, as surety for the appeal. This is an engagement to pay according to the result of that suit; and ft is no answer to the plaintiff at law for the surety for an appeal, more than for bail, to say that the verdict and judgment were unjust; unless by concert and collusion between fhe plaintiff and defendant at law, such unjust judgment were suffered for the mere purpose of charging the surety,
 
 *219
 
 where the principal was not really chargeable by reason of his insolvency. But the bill charges no such collusion between the defendant William and his father. On the contrary, the charge is that the defendant imposed on his father in his dotage, and thus procured unfounded confessions. But even in that form the charge is wholly and directly denied. Upon this part of the case, therefore, there is no ground for relief to the plaintiff. As between the parties of record at law, the question of payment was both fully open, and has been fully tried at law; and this court cannot re-examine it. There is no intimation of collusion on the part of the father; and the charge of collusion between the two defendants here does not relate to this part of the case. The pleas of payment and satisfaction were put in by the father, or, rather by the plaintiff in the father’s place; and it is not pretended in the bill that the administrator interfered to prevent the present plaintiff offering on those issues all the evidence he chose, and the answers state that the whole management of the suit was left to this plaintiff. Collusion be-, ing thus out of the case, there is no ground on which the surety for the appeal can have the case re-examined here, if the party defendant to the suit could not himself have it reexamined on the same ground. But there is a charge of collusion between the present defendants respecting another part of the .case. It is charged and not denied, that Keenon is insolvent, and that he administered at the instance of William Piercy for the purpose merely of having the suits between the father and his sons revived, and without any intention on his part of interfering in the suits; and it is admitted that his intestate left no effects, and that he did not plead “ no assets.” Upon this, it is contended for the plaintiff that he ought to be relieved, because, by pleading the want of assets, there would have been a judgment in favor of the administrator, upon which the sureties to the appeal would have been discharged. We should think the plaintiff entitled to the relief he asks, if the administrator could have been admitted to plead, as it is thus supposed he ought, and if the effect of a verdict in favour of the administrator on
 
 *220
 
 that plea would discharge the surety. But upon those points plaintiff, as we think, labours under a mistake.
 

 We believe it is common, in this State, for executors and administrators, against whom a suit, originally brought'against the testator or intestate, is revived, to plead fully administered or other pleas to protect themselves as executors or administrators.
 

 How the practice arose we are not informed, and it is contrary to the course in England.
 
 Smith
 
 vs.
 
 Harman,
 
 6 Mod. 142, 1 Salk. 315, 2 Saund. 72. Note O. But we do not now propose to consider the propriety, of our practice, but, for the purposes of this cause, admit that the administrator might have so pleaded. Still the surety for the appeal would not have been discharged, although there would have been jndgment to a certain extent in favor of the administrator. If, in a suit revived against an administrator, he may plead as in a suit brought originally against him, then, in the revived suit, any judgment may be rendered for the plaintiff, which, upon the same pleas and verdict, would be given in his favour in an original suit against the administrator.— Therefore, upon a plea of fully administered, and a verdict in affirmance of it, the plaintiff might, according to our law, sign judgment for his debt quando, or sign his judgment and pray process against the heirs. In either case, there is a debt ascertained and adjudged to the plaintiff; for
 
 which,
 
 according to the terms of his bond,' the surely for the appeal is liable. The absurdity of holding otherwise, will at once appear from this consideration: that it would discharge the surety upon the ground of the principal’s inability to pay; whereas the danger, that he was, or might become, insolvent, was the very reason for requiring a surety, who is to pay the recovery, if the principal either will not or cannot pay it. The present plaintiff has been in no degree injured by the omission of the administrator to plead the want of assets, since, if he had so .pleaded, the plaintiff would have been liable in the same degree and to the same extent as he now js upon the judgment rendered against him.
 

 $ rqust, therefore, be certified to the Court below, that this
 
 *221
 
 Court sees no error in the interlocutory decree; and the plaintiff must pay the costs in this Court.
 

 Per. Curiam. The interlocutory decree dissolving the Injunction confirmed.