Argued February 10; reversed March 2, 1937

# OREGON-WASHINGTON R. & NAVIGATION CO.
## ET AL. *v.* REID ET AL.

(65 P. (2d) 664)

In Banc.

*Fletcher Rockwood,* of Portland (A. C. Spencer, Maguire, Shields & Morrison, Wilson & Reilly, and Carey, Hart, Spencer & McCulloch, all of Portland, on the brief), for appellants.

*A. G. Fletcher,* of Portland (Gunther F. Krause, of Portland, on the brief), for respondents.

BELT, J.   This is a suit to enjoin the enforcement of a judgment in a personal injury action alleged to have been procured through fraud of the defendant Reid.   The defendants Krause and Moulton were made parties merely because they appeared as attorneys of record in the original law action.   There is no intimation or charge that they participated in the alleged fraudulent action of their client, or that they had any knowledge of the same.   A general demurrer was sustained to the amended complaint and, upon refusal of the plaintiffs further to plead, the court dismissed the suit. Hence this appeal.

The sole question is whether the plaintiffs have alleged facts sufficient to justify a court of equity in setting aside the judgment.   In the consideration of this matter it will be assumed on demurrer that the material facts set forth in the amended complaint are true. Under the issue of law presented, the court is not concerned as to whether the plaintiffs will be able to establish the truth of their allegations of fact in the event the demurrer is overruled and the defendants are required to answer on the merits.

From the amended complaint herein, to which is attached the pleadings in the original action, we glean the following facts:

Homer C. Reid, under the false and fictitious name of Robert M. Boyles, commenced an action against the Oregon-Washington Railroad & Navigation Company;

Northern Pacific Terminal Company and Northern Pacific Railway Company to recover damages for personal injuries alleged to have been sustained in falling down stairs in the Union Station at Portland, Oregon, on May 9, 1934. The railway companies were charged with negligence in failing to maintain the stairway in a reasonably safe condition in that a metal step plate was so insecurely fastened to the step that it "tipped" thereby causing Reid to fall down the stairway injuring "his left leg and fracturing a rib on the left side". After issues were joined, the cause was submitted to a jury. A verdict was returned in favor of the plaintiff therein in the sum of $1,275, and judgment was entered accordingly on March 12, 1935.

It appears that, during the course of the trial of the personal injury action, the railway companies on March 8, 1935, caused a photograph to be taken of the plaintiff therein—who appeared under the name of Robert M. Boyles—and commenced an investigation relative to his personal injury history which extended through the states of Georgia, Florida and Illinois. It is alleged that, as a result of this investigation the railway companies learned the following facts concerning the history of the defendant Reid, "during periods prior to May 9, 1934":

"(a) Defendant Reid's true name is Homer C. Reid and not Robert M. Boyles;

"(b) In the late summer of 1928 defendant Reid injured a leg while at either Chicago, Illinois, or at Detroit, Michigan;

"(c) On or about October 14, 1928, defendant Reid, then in the City of Chicago, Illinois, purchased a ticket accident insurance policy from Travelers Insurance Company. Thereafter he presented two claims, one to said Travelers Insurance Com-

pany, and the other to McLennon Construction Company, wherein he asserted that on October 14, 1928, at about 7:30 P. M., after the purchase of said policy, and while walking along Eleventh Street in the City of Chicago, he was injured when he stumbled over a projecting angle iron and fell to the ground.

"(d) In presenting said claim to said Travelers Insurance Company for injuries asserted to have been sustained on October 14, 1928, defendant Reid asserted that his injuries had been to *his left ankle, left knee, left hip, left side and left arm.* Said Travelers Insurance Company, on or about December 14, 1928, made a settlement with defendant for the alleged accident on October 14, 1928, and paid defendant Reid a sum of money, the exact amount of which is at this time unknown to plaintiffs. (Italics ours.)

"(e) In the month of December, 1928, or January, 1929, while at Jacksonville, Florida, defendant Reid induced one Joseph D. Anderson to present a false and fraudulent claim for an accident asserted to have occurred on December 14, 1928, and to have been caused by negligence of A. Bentley & Sons of Jacksonville, Florida. In said claim it was asserted that said Anderson at about 8:30 P. M. of said day, fell while walking along a temporary and unlighted walk-way, and said claimant gave the name of Homer C. Reid, the defendant, as a witness to said accident.

"(f) On or about December 26, 1928, defendant Reid procured from Aetna Insurance Company a short term accident policy using the name of Ray Ruff, and giving as his address Wray or Ray, Georgia. On or about January 3, 1929, defendant Reid presented a claim to said insurance company asserting that on December 27, 1928, and while said policy was in force and effect, he was injured when he fell over a truck on a sidewalk in front of the Seminole Hotel at Jacksonville, Florida.

In his claim he asserted that his injuries consisted of severe contusions to his *left knee and his right side and a sprain of his left ankle.* (Italics ours.)

"(g) During the month of January, 1929, defendant Reid, under the name of Ray Ruff, presented a claim to Seminole Hotel, Jacksonville, Florida, for injuries said to have been caused by the accident of December 27, 1928, hereinbefore described.

"(h) After defendant Reid, under the name Ray Ruff, was identified as the same person who, as Homer C. Reid, had presented claims for an alleged accident in Chicago, Illinois, on October 14, 1928, he abandoned his claims arising out of the alleged accident of December 27, 1928.

"(i) Defendant Reid at times prior to May 9, 1934, has been employed by Chicago and Eastern Illinois Railway Company, Cleveland, Cincinnati, Chicago & St. Louis Railway Company, and Missouri Pacific Railroad Company."

It is further alleged that upon being advised on May 3, 1935, of the above information concerning the personal history of the defendant Reid, counsel for the railway companies on the following day moved for a new trial on the ground of newly discovered evidence. The trial court denied the motion and, upon appeal to this court, the order denying a new trial was affirmed for the reason that the motion was not made within the statutory time (*Boyles v. Or.-Wash. R. & N. Co.,* 153 Or. 70 (55 P. (2d) 20.)) On appeal a supersedeas bond was executed wherein the St. Paul-Mercury Indemnity Company of St. Paul, Minnesota, plaintiff herein, was named as surety. After the mandate in the law action was entered on April 1, 1936, the judgment debtors two days thereafter commenced the instant suit.

The gravamen of the amended complaint is found in the following paragraphs:

## "XIV.

The said accident alleged in said complaint in said cause No. 114-337 to have happened on May 9, 1934, happened as a result of the deliberate intent and plan of defendant Reid, devised, conceived and executed by defendant Reid as the basis of a false and fraudulent claim of defendant Reid against plaintiff railway companies for personal injuries to defendant Reid, and the injuries to the person of defendant Reid at said time and place *were intentionally self-inflicted,* all for the purpose of fraudulently forcing plaintiff railway companies to pay money to defendant Reid in satisfaction of said claim. (Italics ours.)

## "XV.

The false and fraudulent conduct of defendant Reid in the presentation and prosecution of said cause No. 114-337, as hereinbefore alleged, prevented plaintiff railway companies, without any fault or negligence on the part of any of the plaintiff railway companies or of agents of plaintiff railway companies, or any of them, from learning the true facts of defendant Reid's true name and his prior history and the true facts with respect to the alleged accident on May 9, 1934, *and the injuries then sustained* or claimed to have been sustained by defendant Reid, and prevented plaintiff railway companies *from fully contesting the issues* made by the pleadings in said cause No. 114-337, *and from asserting and prosecuting the defense available to plaintiff railway companies,* had not said fraud prevented acquisition by plaintiff railway companies of knowledge of the true facts, that said alleged accident was not in fact accidental, but was, on the other hand, intentionally accomplished by defendant Reid." (Italics ours.)

The substance of the amended complaint, briefly stated, is that the defendant Reid, by the use of a false and fictitious name, concealed his identity and thereby

prevented the railway companies from fully and fairly asserting their defense in the personal injury action and that, had it not been for such fraud, a different judgment would have been rendered. More specifically, the railway companies assert that the fraud of Reid in concealing his identity prevented them from showing (1) The history of Reid in personal injury claims prior to the one in question; (2) the extent of injuries sustained or claim to have been sustained by Reid as a result of the alleged negligence of the railway companies; and (3) that the injuries of Reid were "intentionally self-inflicted."

■■ Public policy demands that there should be an end to litigation. It also dictates that every person is entitled to his "day in court" with the opportunity to fully and fairly present his entire case. When the active fraud of his adversary prevents fair submission of the cause and, had it not been for such fraud, a different judgment would have been entered, equity will grant relief from the judgment thus obtained. While equity is reluctant to set aside a judgment, it will do so when clearly convinced that it has been procured through fraud: Freeman on Judgments (5th Ed.), Sec. 232; 15 R. C. L. 760. It is not every species of fraud, however, that vitiates a judgment. It is fraudulent to give perjured testimony and such evidence may result in a judgment but, according to the great weight of authority, equity will not interfere for that reason alone, since the unsuccessful party had his opportunity to refute the false testimony. If the rule were otherwise, there would be no end to litigation: *Friese v. Hummel,* 26 Or. 145 (37 P. 458, 46 Am. St. Rep. 610). However, as stated in 34 C. J. 476:

"* * * if the perjury is accompanied by any fraud extrinsic or collateral to the matter involved in the

original case sufficient to justify the conclusion that but for such fraud the result would have been different, a new trial may be granted.'' Citing numerous authorities in support of the text.

It is only when the fraud is extrinsic or collateral to the matter actually tried that equity will enjoin enforcement of the judgment: *United States v. Thockmorton,* 98 U. S. 61 (25 L. Ed. 93). In 15 R. C. L. 762, it is said:

''Relief is granted for extrinsic fraud on the theory that by fraud or deception practiced on the unsuccessful party, he has been prevented from fully exhibiting and trying his case, by reason of which there never has been a real contest before the court of the subject matter of the suit.''

Extrinsic, as distinguished from intrinsic fraud, pertains not to the judgment itself, but to the manner in which it is procured: *Caldwell v. Taylor,* 218 Cal. 471 (23 P. (2d) 758, 88 A. L. R. 1194); *Flood v. Templeton,* 152 Cal. 148 (92 P. 78, 13 L. R. A. (N. S.) 579).

■ The essential elements of a cause of suit to enjoin the enforcement of a judgment procured through fraud are: (1) The judgment ought not in equity and good conscience be enforced; (2) There must be a meritorious defense to the action on which the judgment is founded; (3) Fraud which prevented a full and fair defense to the action; (4) It must be established that had it not been for such fraud it is reasonably certain a different judgment would have been entered; (5) The absence of fault, or negligence on the part of the judgment debtor; and (6) Absence of an adequate remedy at law.

■■ Let the amended complaint be tested in the light of the above legal principles. Assuming that the allegations of the plaintiffs are true, it is manifest that the

judgment obtained is unconscionable and Reid should not be permitted to receive the benefits thereof. If, in truth and in fact, the injuries were self-inflicted or the fraudulent concealment of Reid's identity prevented the railway companies from having a "fair adversary trial", the judgment can not stand. Certainly it is a meritorious defense that the injuries were self inflicted. Furthermore, the railway companies were entitled to fairly contest the extent of the injuries. They were prevented from doing so by the fraudulent concealment of identity. It is entirely reasonable that, had the plaintiffs herein known the history of Reid relative to prior injuries and the assertion of false claims by him, a more complete defense would have been made and it is altogether probable that a different judgment would have been entered. This court does not go to the extreme of holding, as in some jurisdictions, that equitable relief can not be granted unless it is *conclusively* shown that a different judgment would have been entered. As stated in 34 C. J. 443:

"It is not necessary to show *conclusively* that complainant has a sufficient cause of action or defense, but it suffices to establish good faith and tender a seriously litigable issue." (Italics ours.)

Also, see *Pickford v. Talbott*, 225 U. S. 651 (56 L. Ed. 1240, 32 S. Ct. 687). *State v. Vincent*, 152 Or. 205 (52 P. (2d) 203), is not to the contrary when read in the light of the facts under consideration.

■ The court is not unmindful that the extent of Reid's injuries was an issue in the original law action, and that ordinarily such issue can not again be litigated, but, as stated in 34 C. J. 467, "This rule assumes that there has been a trial in which the respective parties have had an opportunity fully to present their claims."

In *Bacon v. Bacon,* 150 Cal. 477 (89 P. 317, quoted with approval in *Mitchell v. Rasey,* 139 Cal. App. 350 (33 P. (2d) 1056), it is said:

"Where the unsuccessful party has been thus hindered, he is not to be refused relief on the ground that the fact on which his defense or claim in the original action depended, and by which he expects to bring about a different result in the new suit for equitable relief, was technically in issue in the original action or proceeding, or was necessarily decided by the court in that action and concluded by the original judgment beyond reach on collateral inquiry."

In the light of the record in this case, it is not believed that the railway companies had the kind of trial the law contemplates. The fraud of Reid in using a false name closed the door to a full and fair investigation. It was a fraud upon the court as well as upon the adverse parties. Why did Reid come into court with a false name unless it was for the purpose of concealing his unsavory record?

It may be that the information obtained as a result of the investigation and specifically alleged in the complaint has no relevancy to the question of self inflicted injuries, but some of it is material on the question of the extent of the injuries. Such evidence would, at least, have strongly impeached the defendant Reid who, in response to the question as to "whether he had sustained any injuries prior to May 9, 1934", answered that he had only received a leg fracture at San Francisco, California, on August 10, 1928—all of which appears in the amended complaint herein.

■ It affirmatively appears from the pleading that plaintiffs exercised reasonable diligence in ascertaining the fraud of defendant Reid. The railway companies were not obliged to anticipate that Reid would come into

court under a false name. It was only by means of the photograph that the railway companies were able to find out the truth. In view of the scope of the inquiry, the knowledge acquired was transmitted with reasonable dispatch to counsel, but it came too late to be of any avail in the motion for a new trial. When the fraud was discovered the statutory time for filing a motion for new trial had expired. The judgment debtors completely exhausted their remedy at law. Because plaintiffs mistook their remedy in law does not preclude them from asserting their rights in equity: *State v. Vincent,* supra; *Huffman v. Knight,* 36 Or. 581 (60 P. 207).

■ The court is of the opinion that the fraud of Reid is pleaded with sufficient particularity. The facts relative to the use of a false name are specifically pleaded. The allegation that such fraud prevented plaintiffs from asserting the injuries "were intentionally self inflicted" is not a conclusion of law. It is a pleading of the ultimate facts. Plaintiffs were not obliged to plead all the evidence they might have to establish the charge of self infliction of injuries: *Egli v. Hutton,* 135 Or. 175 (294 P. 347); *Weinstein v. Mullen,* 116 Or. 549 (240 P. 879); *National Surety Co. v. Johnson,* 115 Or. 624 (239 P. 538). What appellants' evidence may be at the trial relative to such issue and that of the extent of the injury is not involved in the question as to whether or not the demurrer to the amended complaint should have been sustained.

*Chicago, R. I. & P. R. Co. v. Callicotte,* 267 F. 799 (16 A. L. R. 386), is an analogous case wherein a suit was brought to enjoin a judgment obtained in a personal injury action. Callicotte claimed permanent paralysis of his lower limbs as a result of an accident caused

by the negligence of the railway company. Evidence showed that, through a conspiracy between Callicotte, his physician, and members of his family, he was enabled to feign paralysis to such an extent that he deceived the company doctors who examined him prior to trial. He was exhibited before the jury as a hopeless paralytic, but at home—with the window blinds drawn so as to conceal his true condition—he moved about with perfect use of his limbs. When chopping wood he was dressed in his wife's clothes. The court held that such deception constituted extrinsic fraud and set aside the judgment.

Also see *State v. Vincent*, supra; *Watrous v. Salem Brewery Ass'n*, 151 Or. 294 (49 P. (2d) 375), and *Caldwell v. Taylor*, supra, which are instructive cases on the question of extrinsic fraud and strongly support the conclusion reached in the instant case that equity should grant relief as prayed for in the amended complaint.

Finally it is urged by respondents that since the plaintiffs, with knowledge of the alleged fraud, executed a supersedeas bond on appeal and the judgment was affirmed, they are precluded from enjoining the enforcement of the judgment. The statutory undertaking on appeal, wherein the railway companies were named as principals and the St. Paul-Mercury Indemnity Company as surety, was an agreement to satisfy the judgment so far as affirmed on appeal. Since the judgment was affirmed, the defendants herein assert the plaintiffs are absolutely and irrevocably bound thereby. The court is confronted with the question as to the effect or operation of a decree to enjoin the enforcement of a judgment. It is clear that when such decree is entered no execution can issue to enforce the judgment nor can any suit or action be maintained

thereon. Plaintiffs undertook to exhaust their remedy at law by appealing from the judgment. By so doing and giving a stay bond can it be said that plaintiffs are precluded from asserting that the judgment was procured by fraud? If such is the rule, the instant suit was a vain and idle thing. We can not agree with the contention of respondents. Fraud vitiates everything. The general rule that a principal and a surety on a stay bond are estopped from attacking the judgment has no application to the facts as alleged herein. Authorities cited relative to cases involving intrinsic fraud are not in point. As a matter of fact, the authorities on the precise question under consideration are exceedingly rare. In 34 C. J. 500, speaking of the effect and operation of injunctions against judgments, it is said:

"'* * * the injunction will prevent the maintenance of an action upon the judgment, either at law or in equity, or even an action against the surety upon a bond given in an effort to appeal from that judgment.'' Citing *Strong v. Wesley Hospital,* 125 Ill. App. 201, a case in point.

Also see *Piercy v. Piercy,* 36 N. C. 214, and *Supreme Council v. Boyle,* 15 Ind. App. 342 (44 N. E. 56).

In our opinion the amended complaint states a cause of suit. It follows that the decree of the lower court dismissing the suit is reversed and the cause is remanded with directions to overrule the demurrer of the defendants and to permit them to file an answer within ten days from date of mandate. Upon failure of the defendants so to do, a decree will be entered enjoining enforcement of the judgment.