Argued and submitted January 8, 2021, affirmed March 23, 2022

HERITAGE PROPERTIES, LLC,
*Plaintiff-Appellant,*

*v.*

WELLS FARGO BANK, N.A.,
as Trustee of the MASTR Asset Backed
Securities Trust 2007-NCW Mortgage
Pass-Through Certificate Series 2007-NCW,
*Defendant-Respondent.*

Multnomah County Circuit Court
18CV02539;
A169676 (Control), A168799

508 P3d 577

Plaintiff instituted an arbitration proceeding to resolve a property dispute with defendant. When defendant failed to appear in the arbitration, the arbitrator entered an award in plaintiff's favor, and the trial court confirmed that award in a general judgment. However, the court later set aside the judgment pursuant to ORCP 71 B(1)(c) and other authorities, concluding that the award was the result of fraud by plaintiff. On appeal, plaintiff contends, among other arguments, that the court lacked the authority to set aside the judgment because (1) defendant's allegations assert intrinsic rather than extrinsic fraud, and (2) to the extent that ORCP 71 B(1)(c) permits a court to set aside a judgment for intrinsic or extrinsic fraud, that rule is invalid because the addition of that language modified the substantive law in violation of ORS 1.735(1). *Held*: The Court of Appeals concluded that, even if defendant's allegations asserted a claim of intrinsic fraud, a matter which the court did not decide, ORCP 71 B(1)(c) permits a trial court to set aside a judgment upon a showing of either intrinsic or extrinsic fraud. The 2010 amendment to ORCP 71 B(1)(c) expanding trial courts' authority to set aside judgments for fraud, "whether previously called intrinsic or extrinsic," did not "abridge, enlarge or modify the substantive rights of any litigant" as prohibited by ORS 1.735(1). As a result, the trial court had the authority to grant relief from the judgment pursuant to that rule.

Affirmed.

Shelley D. Russell, Judge.

Michael J. Morris argued the cause for appellant. Also on the briefs was Bennett Hartman LLP.

Tara J. Schleicher argued the cause for respondent. Also on the brief were Jason Ayres, Eryn Karpinski Hoerster, and Foster Garvey PC.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Affirmed.

**SHORR, J.**

Plaintiff Heritage Properties, LLC appeals from a trial court order granting relief from a general judgment that had confirmed an arbitration and money award.[1] Plaintiff instituted arbitration proceedings to resolve a property dispute with defendant Wells Fargo, N.A., as trustee of the MASTR Asset Backed Securities Trust 2007-NCW Mortgage Pass-Through Certificate Series 2007-NCW. When defendant failed to appear in the arbitration and subsequent *prima facie* hearing, the arbitrator entered an award in plaintiff's favor, and the trial court confirmed that award in a general judgment. However, the court later set aside the judgment pursuant to ORCP 71 B(1)(c) and (e) and ORCP 71 C on defendant's motion, concluding that the award was "grossly excessive" and the result of fraud by plaintiff. On appeal, plaintiff contends that the court erred in setting aside the judgment, and argues that the court "lacked jurisdiction to set aside the judgment under ORCP 71 C, lacked authority to set aside the judgment under ORCP 71 B(1)(c), and misapplied ORCP 71 B(1)(e)." As we explain below, we conclude that the trial court did not err in setting aside the judgment pursuant to ORCP 71 B(1)(c), and therefore affirm.

On review of an order granting a motion to set aside a judgment, we state the undisputed facts in the light most favorable to the moving party, here defendant. *Wershow v. McVeety Machinery*, 263 Or 97, 103, 500 P2d 696 (1972); *see also Kerridge v. Jester*, 316 Or App 599, 600, 502 P3d 1206 (2021) (doing same when reviewing the denial of a motion to set aside a judgment). "However, we accept the trial court's findings of disputed fact, if there is evidence to support those findings." *Kerridge*, 316 Or App at 600. A full recitation of the facts and procedural maneuvers leading up to this appeal would be lengthy and unnecessary. We cite only those facts that frame our consideration of the parties' arguments on appeal.

In early 2016, defendant foreclosed on two acres of real property known as "37188 SE Rhodes Rd." in Estacada

---

[1] Pursuant to ORS 19.205(3), "[a]n order that is made in the action after a general judgment is entered and that affects a substantial right *** may be appealed in the same manner as provided in this chapter for judgments."

and arranged with a listing broker called H&H Preferred Real Estate (H&H) to offer the property for sale. The property contained a main residence, detached shop, and "second manufactured home." However, upon becoming the listing agent, H&H contacted the county and was told that the manufactured home was not "part of the property." Later in April, the county tax assessment department reported to H&H that the manufactured home was placed on the property in 1993 but was not in the assessor's records or permitted. H&H communicated that information to defendant and proceeded to list the property for sale on April 12. The listing available to real estate brokers noted that the manufactured home "does not appear in county records." The more public listing stated that the manufactured home was "unpermitted."

Plaintiff made an offer on the property on April 13, through its agent Chace Stalcup.[2] H&H informed Chace that the manufactured home was not in the county records and was unpermitted, but encouraged plaintiff to do its own due diligence. Heath Stalcup, plaintiff's principal, contacted the county and was told the manufactured home was permitted and did appear in county records. The parties agreed to a sale of the listed property, and the sale closed on April 29, 2016. Notably, at the time of the sale, defendant was not in fact the listed owner of the manufactured home in the ownership records maintained by the Oregon Department of Consumer and Business Services (DCBS).

The parties used a common form purchase and sale agreement with several additional addenda, including, as relevant here, a 15-page "Real Estate Purchase Addendum." The real estate purchase addendum contained two provisions that are particularly relevant to this dispute. First, the addendum stated that

"notwithstanding any provision to the contrary in THE AGREEMENT, SELLER'S LIABILITY AND BUYER'S SOLE AND EXCLUSIVE REMEDY IN ALL CIRCUMSTANCES AND FOR ALL CLAIM(S) (as the term is

---

[2] Chace Stalcup is a son of the principal of plaintiff, Heath Stalcup. We refer to the members of the Stalcup family involved in this dispute by their first names to avoid confusion.

defined in <u>Section 24</u> hereof) arising out of or relating in ANY WAY TO THE AGREEMENT and/or THE SALE OF THE PROPERTY TO BUYER INCLUDING, BUT NOT LIMITED TO, SELLER'S BREACH *** OF THE AGREE-MENT, any defects (latent or apparent) RELATING TO *** SELLER'S TITLE TO THE PROPERTY, *** or any other costs or expenses incurred by buyer IN CONNEC-TION WITH THE AGREEMENT SHALL BE LIMITED TO no more than THE RETURN OF BUYER'S EAR-NEST MONEY DEPOSIT IF PERMITTED BY APPLICA-BLE LAW. IF NOT PERMITTED BY APPLICABLE LAW THEN BUYER'S REMEDY SHALL BE LIMITED TO ACTUAL DAMAGES."[3]

(Uppercase and underscoring in original.) The addendum also contained a provision pertaining to personal property:

"<u>Personal Property:</u>   Items of personal property, including but not limited to *** manufactured homes *** now and hereafter located on the Property, are not included in the sale of the Property or reflected in the Purchase Price. Any personal property at or on the Property may be subject to claims by third parties ***. Seller makes no representations or warranties as to the condition of any personal property, title thereto, or whether any personal property is encumbered by any liens. Buyer assumes responsibility for any personal property remaining on the Property at the time of closing."

(Underscoring in original.) Following the close of the sale, plaintiff recorded a special warranty deed for the property.

Over a year after closing, plaintiff received a "delinquent notice" from the county tax assessor for the manufactured home for several years of unpaid property taxes totaling $5,471.64. That notice listed the home with the address "37170 SE Rhodes Rd." By that time, plaintiff had expended over $20,000 repairing and remodeling the home, increasing the value of the manufactured home to $40,000 by plaintiff's estimation. Plaintiff alleges that, after receiving the notice, it discovered that the certificate of ownership maintained by DCBS listed Ruth Kozer, then deceased, as the owner of record. Additionally, the certificate noted a lien recorded against the manufactured home. Plaintiff sent a letter to

---

[3] Plaintiff paid $2,100 in earnest money.

defendant demanding remedy of the title defects, and defendant referred plaintiff to its attorney-in-fact, Specialized Loan Servicing LLC (SLS). SLS did not respond to plaintiff's demand. Plaintiff also sought remedy from H&H, which did respond via email on July 19, 2017. H&H contended that plaintiff's

> "concerns were raised too late under the sales contract, that plaintiff had knowledge at the time of the sale that there might be issues with respect to the manufactured home's title but chose to rush through closing, that the manufactured home had no value and no title at the time of sale and plaintiff knew that, that the property was sold 'as is' as specified in the contracts, that plaintiff's name appeared on the tax notice indicating that plaintiff had ownership of the manufactured home, that the Real Estate Purchase Addendum clearly stated that the seller/agent was not liable for any costs due to tax, zoning, etc., and that the buyer's recovery for any defects in title was limited to recovery of the buyer's earnest money."

Following this exchange with H&H, plaintiff instituted arbitration proceedings against defendant on August 15, 2017, arguing that defendant had breached the covenants of the warranty deed because defendant did not own or convey marketable title to the manufactured home. Plaintiff also named H&H as a responding party. In its statement of claim to the arbitrator, plaintiff attached the purchase and sale agreement and selectively included some of the addenda to the agreement, but, significantly, omitted several of the material addenda to that agreement, including the "Real Estate Purchase Addendum" excerpted above. Plaintiff also asserted that the value of the manufactured home "conveyed in the sale" was approximately $40,000. Defendant received notice of the arbitration but did not respond or otherwise appear.

Plaintiff moved to set a *prima facie* hearing, and the hearing was held on December 7, 2017. However, in the following weeks, before the arbitrator had ruled on the motion, two notable events occurred. On December 20, Heath submitted an Affidavit in Support of Change to a Manufactured Home to DCBS to have the certificate of ownership changed from Ruth Kozer to plaintiff. Then on January 2, plaintiff

obtained satisfaction of lien documentation, resolving the security interest in the manufactured home. Unaware of these developments, the arbitrator entered an Interim Award of default against defendant on January 11, 2018, in the amount of $45,436.60, representing $40,000 in damages for the value of the manufactured home and $5,436.60 for the back taxes, plus costs and attorney fees.[4]

On January 19, plaintiff filed a petition in the trial court for an order confirming the arbitration award. On February 15, DCBS transferred the Certificate of Ownership into plaintiff's name, giving plaintiff title to the manufactured home for a fee of $55. On February 18, plaintiff and H&H settled their dispute, and H&H paid plaintiff $5,436.60 as reimbursement for the back taxes, with an agreement that plaintiff would pay back the funds if it obtained judgment from defendant. Defendant contends that, due to the developments during January and February outlined above that resolved plaintiff's title issues, plaintiff had received "all the remedies it alleged it was entitled to" no later than February 16, 2018.

Defendant claims that it became aware of the interim arbitration award sometime in February 2018, and, on February 26, it moved in the arbitration proceeding to vacate the award under ORCP 71 based on excusable neglect, inadvertence, and mistake. At the hearing on that motion in March, plaintiff did not produce the relevant purchase addendum or disclose that it had obtained title to the manufactured home for a $55 fee. The arbitrator concluded that defendant's failure to appear was not excusable and denied defendant's motion.[5] Thereafter, plaintiff filed a proposed final award. Defendant objected to the proposed final award via email, raising, apparently for the first time,

---

[4] The arbitrator entered an interim award because the claim against H&H had not yet been heard.

[5] It is unclear why defendant filed an ORCP 71 B motion in the arbitration proceeding. Notably, ORCP 71 addresses relief from "judgment or order," and here no judgment or order existed at the time defendant moved the arbitrator to vacate the award. *See also* UTCR 13.040(2) ("Until a case is assigned to the arbitrator, Oregon Rules of Civil Procedure apply. After a case is assigned to an arbitrator, these arbitration rules apply except where an arbitration rule states that a Rule of Civil Procedure applies."). Plaintiff does not argue that it was improper for the arbitrator to consider defendant's motion on its merits.

that it had discovered pursuant to a state record request that plaintiff had already secured title to the manufactured home. Defendant argued that as a result, plaintiff was set to receive an unjust and inequitable recovery. By letter opinion, the arbitrator expressed concern that the award might provide a "windfall recovery," but concluded that the importance of providing finality to the decision outweighed that concern and entered a final award on May 7, 2018.

Plaintiff then filed an amended petition in the trial court to confirm the final arbitration award. In response, defendant petitioned the court to vacate or modify the award pursuant to ORS 36.705(1)(a) and (c) and ORS 36.710(1)(a), arguing that plaintiff had received a "windfall" because plaintiff had already obtained title to the manufactured home, that the award had been "procured by fraud or other undue means," that "the arbitrator [had] refused to consider evidence material to the controversy," and that "the arbitrator exceeded his powers." The court granted plaintiff's petition, denied defendant's petition, and entered a general judgment confirming the arbitration award and money award on September 6, 2018.[6]

In October 2018, defendant moved to set aside the judgment pursuant to "ORCP 71 B(b), (c) and (d) [sic]" due to newly discovered evidence and fraud, alleging that plaintiff concealed that it had already obtained the certificate of ownership for the manufactured home and thus misrepresented its damages. The court denied defendant's motion.[7]

Around that time, defendant filed a collateral proceeding for fraud against plaintiff. Defendant contends that via discovery in that collateral proceeding, it obtained evidence that plaintiff had committed fraud in the following ways: (1) by omitting the relevant addendum from its statement of claim and exhibits to the arbitrator, (2) by withholding from the arbitrator and court that it had obtained the certificate of ownership for the manufactured home for $55, (3) by withholding from the arbitrator and court that it

_____

[6] The court's ruling was not accompanied by an opinion, letter, or ruling from the bench explaining the decision.

[7] Again, that ruling was not accompanied by an opinion, letter, or ruling from the bench explaining the court's decision.

had settled with H&H for the amount of the back taxes, and (4) by misrepresenting to the arbitrator its knowledge of the manufactured home's title issues at the time of the sale.[8]

Finally, defendant filed a second motion for relief from the judgment pursuant to ORCP 71 B and C on September 6, 2019. In December, the court granted defendant's motion and signed an order setting aside the judgment pursuant to ORCP 71 B(1)(c), ORCP 71 B(1)(e), and ORCP 71 C, concluding that "Plaintiff's actual damages appear to be limited to $5,436.60 in back taxes and [the] $55 fee to obtain a manufactured home certificate of ownership" and that the arbitrator's award was therefore "grossly excessive and amounts to a windfall to the Plaintiff." The court made detailed findings of fact before concluding:

> "Here, it is apparent that the Plaintiff had in his possession the complete Real Estate Contract and all of the Addenda at the time of the sale. Those documents set out the Plaintiff's rights, responsibilities, and remedies including Defendant's disclaimers as to title, disclaimers as to manufactured homes, and limitation of remedies to recovery of earnest money paid. Plaintiff paid earnest money in the sum of $2,100. Plaintiff withheld that information from the Arbitrator and this Court. In addition, Plaintiff withheld the fact that he obtained the ownership certificate of the manufactured home for $55.00, that he received reimbursement for the back taxes from the seller's agent H&H, that he contracted with his own sons and his own company for the refurbishment work on the manufactured home, and that the value of the manufactured home at the time of purchase was at worst $0, and at best $20,000."

Plaintiff appeals from that order.

On appeal, plaintiff assigns error to the trial court's order setting aside the judgment, contending that the court "lacked jurisdiction to set aside the judgment under ORCP 71 C, lacked authority to set aside the judgment under ORCP 71 B(1)(c), and misapplied ORCP 71 B(1)(e)." Because

---

[8] Defendant explains its delay in discovering that evidence by asserting that plaintiff rebuffed multiple requests for discovery that were sent between the entry of the interim award and the filing of the collateral case. However, defendant also concedes that it discovered that plaintiff had corrected the certificate of ownership in early 2018, via a records request to the state.

the court's order rested on three entirely separate, independent legal bases, we need not conclude that all three of those bases were legally sound for the order in defendant's favor to stand; any one could provide a sufficient basis for the court's order. As we explain, we conclude that ORCP 71 B(1)(c) does indeed provide that authority, and thus we need not analyze the court's authority under ORCP 71 B(1)(e) or ORCP 71 C.

We review a trial court's conclusions as to whether a moving party has established cognizable grounds for relief from a judgment under ORCP 71 B(1)(c) for errors of law. *Union Lumber Co. v. Miller*, 360 Or 767, 778, 388 P3d 327 (2017) (applying that standard of review to a ruling on a ORCP 71 B(1)(a) motion). If a trial court determines that a movant has shown a cognizable ground for such relief, the court is then faced with the secondary, discretionary decision of whether to grant that movant relief from the judgment, and if so, on what terms. *Id.* We review that second, discretionary decision for an abuse of discretion. *Id.*

Plaintiff's arguments are twofold. First, although plaintiff "strenuously denies any fraud," it contends that defendant's allegations assert intrinsic rather than extrinsic fraud for which the trial court lacks authority to set aside the judgment pursuant to ORCP 71 B(1)(c). Although plaintiff acknowledges that the 2010 amendment to ORCP 71 B(1)(c) now permits a court to grant relief from judgment for fraud "whether previously called intrinsic or extrinsic," plaintiff contends that the Council on Court Procedures (Council), the public rule-making body tasked with creating and amending the Oregon Rules of Civil Procedure, lacked the authority to "change the substantive law" in that fashion. That argument is prefaced on ORS 1.735(1), which directs that the Council "shall promulgate rules governing pleading, practice and procedure *** *which shall not abridge, enlarge or modify the substantive rights of any litigant*." (Emphasis added.)

Second, plaintiff contends that it did not commit fraud in the arbitration, in the trial court, or in connection with the entry of the judgment. Plaintiff raises a litany of factual arguments that together contend that it had no responsibility or obligation to submit the information and

documents that the trial court concluded it had "withheld." It is difficult to discern whether plaintiff is contending that the trial court legally erred in concluding that there was fraud based on its factual findings or, instead, contending that the court's factual findings lack evidence. Plaintiff's arguments seem to boil down to the contention that any allegedly withheld information was not material to the dispute.

For its part, defendant contends that the 2010 amendment to ORCP 71 B(1)(c) "abolished the distinction between intrinsic and extrinsic fraud for the purposes of motions to set aside judgments and should absolutely be given effect because the amendment concerned a procedural right, not a substantive one." Additionally, defendant asserts, plaintiff "engaged in extrinsic fraud because it concealed facts from both the arbitrator and the court that prevented a fair submission of the controversy." As to plaintiff's second argument, defendant contends that the trial court's findings of fact are supported by the record.

We address plaintiff's arguments in order, beginning with its argument that the court lacked the authority to set aside the judgment because (1) defendant's allegations assert intrinsic fraud and (2) to the extent that ORCP 71 B(1)(c) permits a court to set aside a judgment for any type of fraud, "whether previously called intrinsic or extrinsic," that rule is invalid because the addition of that language modified litigants' substantive rights in violation of ORS 1.735(1).

Before we begin our analysis, we note that plaintiff does not present any developed argument as to *why* defendant's allegations should be characterized as intrinsic rather than extrinsic fraud or *how* the 2010 amendment to ORCP 71 B(1)(c) "abridge[s], enlarge[s] or modif[ies] the substantive rights" of litigants in violation of ORS 1.735(1). Those deficits make our review difficult. Regardless, as explained below, we conclude that, even if defendant's allegations asserted a claim of intrinsic fraud, a matter which we do not decide, ORCP 71 B(1)(c) permits a trial court to set aside a judgment upon a showing of either intrinsic or extrinsic fraud. Further, we are not convinced, considering

plaintiff's minimal arguments, that the 2010 amendment to that rule abridged, enlarged, or modified the substantive rights of litigants contrary to ORS 1.735(1).

We turn to the applicable law. We examine both ORS 1.735(1), to determine what the legislature intended in prohibiting the council from rulemaking that "abridge[s], enlarge[s] or modif[ies] the substantive rights of any litigant," and ORCP 71 B(1)(c), to determine what the Council intended in expanding the applicability of that rule to any fraud "whether previously called intrinsic or extrinsic." As to both considerations, we apply our usual rules of statutory interpretation, examining the text and context of the statute or rule to determine what the promulgating body intended by the words it used, as well as relevant legislative history where we deem it helpful to our analysis. *Union Lumber Co.*, 360 Or at 785; *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).[9]

We begin by considering ORCP 71 B(1)(c), both before and after the relevant 2010 amendment. Prior to the amendment adopted in 2010 and effective beginning January 1, 2012, ORCP 71 B(1)(c) stated simply that a court could relieve a party from a judgment by motion for "fraud, misrepresentation, or other misconduct of an adverse party." ORCP 71 B(1)(c) (2009). Although that language made no explicit distinction between intrinsic and extrinsic fraud, nearly 100 years of Oregon case law made clear that relief from a judgment or order could only be granted for extrinsic fraud and not for intrinsic fraud. *See, e.g.*, *Johnson v. Johnson*, 302 Or 382, 384, 730 P2d 1221 (1986); *O.-W. R. & N. Co. v. Reid*, 155 Or 602, 610, 65 P2d 664 (1937). The rationale behind that rule was that, in the case of intrinsic fraud, or fraud that consists of acts related to the merits of the case such as perjured testimony, "the litigant had an opportunity to refute the representations. When that opportunity is not used, the litigant is denied relief because of a policy that there must be finality in litigation." *Wimber v. Timpe*,

---

[9] The parties have not cited to any legislative history from either the legislature or the Council in arguing their respective positions on this issue. However, in accordance with our usual rules of statutory interpretation, we have considered relevant history that we deem helpful to our analysis. *See Gaines*, 346 Or at 171-72.

109 Or App 139, 146, 818 P2d 954 (1991). Extrinsic fraud, however, is collateral or unrelated to the factfinder's consideration of the merits, and "the unsuccessful party has been prevented by the fraud from fully trying the case." *Id.*; *see also JRD Development Joint Venture v. Catlin*, 116 Or App 182, 184-85, 840 P2d 737 (1992), *adh'd to as modified on recons*, 118 Or App 502, 848 P2d 136, *rev den*, 316 Or 528 (1993) ("Examples of extrinsic fraud include keeping a party in ignorance of an action, false offers of compromise, an attorney's betrayal of the client's interest to an adversary and other acts of a similar nature."). "As a result, there never has been a real contest of the subject matter of the litigation before the court." *Wimber*, 109 Or App at 146.[10]

In 2009, the Council took up consideration of whether to amend ORCP 71 B(1)(c) to make that provision consistent with FRCP 60(b)(3) and to allow intrinsic as well as extrinsic fraud to form a basis for relief from a judgment by motion. At that time, 27 states and the federal rules had abolished any distinction between intrinsic and extrinsic fraud for that purpose. Minutes, Council on Court Procedures, Nov 21, 2009, 5, https://counciloncourtprocedures. org/Content/2009-2011_Biennium/2009-11-21_minutes_w_ attachments.pdf (accessed Mar 15, 2022). The Council noted that, under the then-existing Oregon rule, parties were often faced with lengthy and expensive litigation over whether the purported fraud was intrinsic or extrinsic. Minutes, Council on Court Procedures, June 5, 2010, 10, Appendix H-4-5, https://counciloncourtprocedures.org/ Content/2009-2011_Biennium/2010-06-05_minutes_w_ attachments.pdf (accessed Mar 16, 2022). That effect "distract[ed] from the underlying issue of addressing fraud," and "ha[d] the unintended consequence of making it more difficult for parties who ha[d] been defrauded to get justice" while "rewarding those who engage in brazen and dishonest behavior." *Id.* at Appendix H-3. The council also noted that other jurisdictions that had already abolished the distinction had not seen their courts inundated with motions

---

[10] A court's inherent authority to set aside a judgment for fraud upon the court, reflected in ORCP 71 C, is still limited to instances of extrinsic rather than intrinsic fraud. *Dept. of Human Services v. M. M. R.*, 296 Or App 48, 51 & n 1, 437 P3d 1233, *rev den*, 365 Or 194 (2019).

for relief from judgment or seen the finality of judgments undermined. *Id.* at Appendix H-6. The Council ultimately voted unanimously to promulgate the amendment. Minutes, Council on Court Procedures, Dec 11, 2010, 7, https:// counciloncourtprocedures.org/Content/Minutes/2010-12-11_ draft_minutes_with_appendices.pdf (accessed Mar 16, 2022).

        To summarize, the 2010 amendment to ORCP 71 B(1)(c) omitted a previous requirement for relief from a judgment by motion such that a movant no longer needed to prove, and the court no longer needed to determine, that the adverse party had committed *extrinsic* fraud specifically, as long as the movant established that the adverse party had committed *some* type of fraud generally. The Council promulgated that amendment to decrease the time and money spent litigating such motions and to refocus the rule to more efficiently address fraud.

        With that in mind, we consider whether the Council exceeded its statutory authority by promulgating that amendment. ORS 1.735(1) states, in relevant part:

    "The Council on Court Procedures shall promulgate rules governing pleading, practice and procedure, including rules governing form and service of summons and process and personal and in rem jurisdiction, in all civil proceedings in all courts of the state *which shall not abridge, enlarge or modify the substantive rights of any litigant.*"

(Emphasis added.) The legislature did not define what it meant in prohibiting the Council from enacting rules that "abridge, enlarge or modify the substantive rights of any litigant." However, existing case law at the time distinguished laws that "alter substantive rights" from those that "merely concern themselves with the remedies which jurisprudence affords for the redress of rights." *Spicer v. Benefit Ass'n of Ry. Emp.*, 142 Or 574, 594, 21 P2d 187 (1933). Further, ORS 1.735(1) mirrors the federal Rules Enabling Act, which similarly prohibits federal rules of procedure that "abridge, enlarge or modify any substantive right." 28 USC § 2072(b). The United States Supreme Court has long framed the necessary analysis under that law as "whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for

justly administering remedy and redress for disregard or infraction of them." *Sibbach v. Wilson & Co.*, 312 US 1, 14, 61 S Ct 422, 85 L Ed 479 (1941); *see also Mississippi Pub. Corp. v. Murphree*, 326 US 438, 445-46, 66 S Ct 242, 90 L Ed 185 (1946) (a procedural rule may affect litigants' rights in an "incidental" way, but "does not operate to abridge, enlarge or modify the rules of decision by which that court will adjudicate its rights. It relates merely to the manner and the means by which a right to recover is enforced." (Internal quotation marks and ellipsis omitted.)). In the years since ORS 1.735(1) was enacted, our cases applying it have spent little time discussing the meaning of "substantive rights," instead implicitly hewing to that federal understanding. *See Jefferson State Bank v. Welch*, 299 Or 335, 340, 702 P2d 414 (1985) (in rejecting contention that ORCP 67 E(2) violated ORS 1.735(1), stating that the rule is "a procedural mechanism which allows for individual judgments within the same action"); *Hoyt v. Paulos*, 96 Or App 91, 94, 771 P2d 647 (1989), *aff'd*, 310 Or 196, 796 P2d 355 (1990) (rejecting trial court's application of ORCP 7 D(4)(a)(i) (1983), stating only that court's interpretation would violate ORS 1.735(1) by affecting when an action is deemed commenced, thereby abridging a "plaintiff's substantive rights to maintain [an] action"); *Harp v. Loux*, 54 Or App 840, 851, 636 P2d 976 (1981), *rev den*, 292 Or 589 (1982) (in considering whether *former* ORCP 7 D(4)(c) (1979) violated ORS 1.735(1), writing summarily that "[w]e do not agree that the change is 'substantive' within the meaning of ORS 1.735, or that it could have any possible negative bearing on defendant's rights").

The above authorities inform our conclusion that, in prohibiting the Council from promulgating rules of civil procedure that "abridge, enlarge or modify the substantive rights of any litigant," the legislature intended to prohibit the Council from promulgating rules that altered the rights, duties, or remedies available under the substantive law or from adopting procedural rules that effectively limit a party's substantive rights to maintain or defend an action. In that way, the legislature intended to limit the Council's rule-making purview to those procedural mechanisms and processes that litigants may utilize to enforce substantive rights. In other words, the Council may determine the

procedural steps that a litigant must follow to enforce their rights but may not change the underlying rights themselves.

With that understanding in mind, we conclude that the 2010 amendment to ORCP 71 B(1)(c) expanding trial courts' authority to set aside judgments for fraud, "whether previously called intrinsic or extrinsic," did not "abridge, enlarge or modify the substantive rights of any litigant" as prohibited by ORS 1.735(1). Returning to plaintiff's precise argument, plaintiff contends that "this change was not one of procedure—the method of moving to set aside a judgment did not change—but rather was a fundamental change to the court-made law relating to when a judgment can be set aside." But, that argument misconstrues the controlling distinction between rules governing procedure and rules altering substantive rights. The 2010 amendment changed the process for seeking and granting relief from a judgment for fraud by omitting the previous requirement that the movant needed to prove that the fraud was extrinsic. In so doing, the Council did not abridge any litigant's right to bring an action to obtain a remedy or impose additional substantive duties or obligations on any litigant. Here, plaintiff's right to seek a remedy for the alleged title defect and defendant's obligations under the deed were not changed by the 2010 amendment to ORCP 71 B(1)(c). Although the amendment provided defendant with a new procedural mechanism to obtain relief from the judgment without having to demonstrate that the alleged fraud was extrinsic, that mechanism did not change defendant's underlying substantive rights and obligations relevant to the title dispute action. And, although the amendment allowed defendant to obtain an order setting aside a judgment that might have otherwise remained final, the amendment does not implicate plaintiff's substantive rights because we are aware of no *substantive* right of plaintiff to the finality of a judgment obtained by its own fraud, misrepresentation, or misconduct. Plaintiff is still free to argue the substantive merits of its case before the arbitrator again on remand, just as it could before the trial court set the judgment aside, and plaintiff has not made any attempt to explain how its substantive rights have been affected. In short, we see no basis to conclude that the amendment in question abridged, enlarged, or modified the

substantive rights of any litigant. The Council was within its authority to promulgate that amendment, and here, the trial court had the authority to grant relief from the judgment pursuant to that rule upon a finding of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]" ORCP 71 B(1)(c).

Finally, we turn to plaintiff's second argument under ORCP 71 B(1)(c), which is its contention that the court erred in concluding that plaintiff had committed fraud in the arbitration, in the trial court, and in connection with the entry of the judgment. As noted above, it is unclear if plaintiff is contending that the trial court legally erred in concluding that there was fraud or that the court's factual findings lack any evidentiary support. Regardless, having reviewed the trial court's ruling and the record, we reject both arguments without extended discussion. Plaintiff concealed facts and made misrepresentations throughout the case to both the arbitrator—including, at times, when plaintiff was unopposed in the arbitration—and the trial court. That information was material to the merits of plaintiff's claim and plaintiff's asserted damages. Therefore, the court did not err in determining that defendant had established cognizable grounds for relief from the judgment under ORCP 71 B(1)(c). Further, the court did not abuse its discretion granting defendant relief, setting aside the judgment, and remanding the case to the arbitrator for trial on the merits.

Affirmed.